**United States Bankruptcy Court
District of New Jersey**
Mitchell H. Cohen U.S. Courthouse
P.O. Box 2067
Camden, New Jersey 08101

**JUDITH H. WIZMUR**

Chief, U.S. Bankruptcy Judge

(856) 757-5126

April 24, 2012

Thomas M. Keeley-Cain, Esq.
Borger Jones Matez & Keely-Cain P.A.
1415 Route 70 East, Suite 305
Cherry Hill, New Jersey 08034-2210

Steven Taieb, Esq.
1155 Route 73, Suite 11
Mount Laurel, New Jersey 08054

Deborah A. Cardenas
3604 Delaware Ave
Pennsauken, New Jersey 08109

James Cardenas
P.O. Box 1308
Merchantville, New Jersey 08109

FILED
JAMES J. WALDRON, CLERK

April 24, 2012

U.S. BANKRUPTCY COURT
CAMDEN, NJ
BY: s/ Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

  Re: Borger Jones Matez & Keeley-Cain, PA
    v. Deborah A. Cardenas and James Cardenas
    Case No. 11-20515 / Adver. No. 11-2102
    **LETTER OPINION**

Dear Counsel and Parties:

You will recall that when the adversary proceeding filed by the law firm of Borger Jones Matez & Keeley-Cain came on to be heard on April 18, 2012, I had occasion to revisit the order entered by this court on October 26, 2012. That order was entered in response to the debtor's motion to modify the claims of the law firm, filed on August 10, 2012. When I reviewed the October 26 order in anticipation of the April 18 hearing, I was particularly struck by the provision in the order that provided for the debtor to retain personal liability on

her obligation to the law firm even if she successfully completed her Chapter 13 case and received a discharge, especially in light of the fact that the entire amount of the claim, as reflected in the proof of claim filed by the law firm, is over $142,000. This is especially so in light of the debtor's meager income status. At the April 18 hearing, I therefore determined, sua sponte, to review the circumstances under which the order was entered.

The debtor filed her Chapter 13 case on April 4, 2011. Her primary asset is her residence, which she owns with her ex-spouse.[1] The house is noted to be worth $114,900, and is encumbered by two mortgages totaling $49,165. The debtor's amended Chapter 13 plan proposes to satisfy attorney's fees, cure arrearages on the second mortgage, and pay a small dividend to unsecured creditors.

The law firm filed a proof of claim on August 1, 2011, asserting that they hold a total claim of $142,122, of which the amount of $55,000 is secured. The claim is premised on services rendered to the debtor in connection with divorce proceedings involving her ex-spouse, which resulted in various judgments entered by the Superior Court of the State of New Jersey. The first judgment, entered on December 3, 2004, provided in pertinent part that

---

[1] Schedule A reflects that the debtor and her ex-spouse own the house as tenants by the entireties, but in fact, because their divorce was effective some time ago, they own the house as tenants in common.

2

James, the ex-spouse, would be responsible to pay to the law firm the amount of legal fees than due, in the amount of $27,994.[2] Apparently, the judgment was appealed. On remand, a second judgment was entered on September 26, 2006, which provided in pertinent part that James would be liable to pay to the law firm all but $2,500 of the debtor's legal fees, in the amount set forth in counsel's certification of services previously submitted to the court. Further, the court set a buy-out price for the marital home, and ordered that if the buy-out was not accomplished, the house would be sold and the proceeds split evenly. Mr. Keely-Cain explains that the certification of services submitted to the state court set forth about $50,000 worth of services rendered, and the rest of the law firm's claim is accrued interest, as provided in the retainer agreement with the debtor.

The law firm filed an adversary proceeding on July 5, 2011, premised on allegations that the debtor should not be afforded a discharge at all, or a discharge of the particular debt due to the law firm, for various reasons.[3] The

---

[2] The judgment provided that this obligation to pay the debtor's legal fees would not be dischargeable, but that pronouncement is not enforceable in these proceedings. See In re Cherpika, No. 91-3249, 1991 WL 276289, *4 (3d Cir. 1991)(citing to Brown v. Felsen, 442 U.S. 127, 99 S. Ct. 2205, 60 L.Ed.2d 767 (1979)).

[3] The law firm cited grounds under 11 U.S.C. 727 for denying the debtor her discharge. That section pertains only to Chapter 7 cases. Also cited was 11 U.S.C. 523(a)(6), which is not available in a Chapter 13 case. See 11 U.S.C. 1328(a)(4).

3

law firm also filed an objection to the debtor's Chapter 13 plan, complaining that the debtor failed to file tax returns since 2006, failed to list assets, failed to file a feasible plan that provided for the law firm's claim and otherwise was guilty of bankruptcy fraud.[4]

Apparently understanding that the debtor's plan could not be confirmed if it did not treat the claim of the law firm in some way, the debtor moved on August 10, 2011 to modify the claim. In that motion, the debtor asserted that because the law firm is being paid outside of the Chapter 13 plan by the debtor's ex-spouse on a monthly basis, the secured claim could be considered in current status outside of the plan. Therefore, the claim did not have to be treated in the plan.

When the motion came on to be heard on October 3, 2011, I did not have the benefit of the law firm's response to the motion.[5] I understood that the law firm held a secured claim against the debtor in the approximate amount of $50,000. I also understood that the law firm was looking for an assignment of

---

[4] The debtor responded to the adversary complaint by reflecting that she did not have enough income to be required to file tax returns since 2006, and she did not list the judgment against her ex-spouse because the judgment was entered for the benefit of the law firm, not for her or her other creditors. She denied that she had intentionally misrepresented anything in her petition.

[5] Mr. Keely-Cain indicated that he had filed a response to the motion, but no response appeared on the case docket.

4

the claim held by the debtor against her ex-husband for the payment of legal fees on her behalf. The debtor's counsel was not opposed to offer an assignment of the obligation.[6] It appears that counsel's main concern was to get the debtor's Chapter 13 plan confirmed, something that could not be accomplished if the claim of the law firm was not treated. I determined the following:

1. The judgments entered in state court against James obligating him for legal fees shall remain in full force and effect.

2. The debtor will assign to the law firm the court ordered awards of attorney's fees against James, and the law firm shall be authorized to pursue collection efforts against him.

3. The debtor shall not be obligated to make payments to the law firm through her Chapter 13 plan, but the debtor will continue to be personally liable for attorney's fees to the law firm.

An order reflecting these terms was entered on October 26, 2012. It was acknowledged that the terms of the order would serve to resolve the pending adversary proceeding. Indeed, when the matter came up on April 18, 2012, the adversary proceeding was dismissed with prejudice.

What caught my attention at the hearing on April 18 was the provision of the order that retains personal liability on the part of the debtor for an enormous obligation ($142,000) even if she completes her Chapter 13 case and

---

[6] The debtor was not in court for the motion. She was hospitalized at the time.

5

receives a discharge of pre-petition debts. Following my discussion with the parties on the record, and my review of the transcript of the proceedings of October 3, 2011, I realize that that provision was not a product of a consensual arrangement between the parties, but rather was the product of my directive, given, frankly, without a clear understanding of the nature and breath of the obligation and the potential ramifications of the ruling. Accordingly, I believe the ruling needs to be revisited. Several questions arise:

1. Has the debtor's obligation to the law firm been reduced to a judgment, so that the debt is secured as to the debtor? It is clear that the debtor owes the obligation, but it is not clear that the obligation has been reduced to judgment. One can argue that the obligation of James to pay to the debtor the amount of attorney's fees was reduced to judgment, but that is a different obligation. If that judgment was not docketed as a judgment lien before the debtor filed her bankruptcy petition, does the automatic stay act to prevent such a judgment lien from arising against a co-debtor who owns property with a debtor as tenants in common?

2. What is the actual amount of the law firm's claim? The contention is that the principal obligation is about $55,000, and the remainder of the obligation is interest, according to the rate noted in the retainer agreement. The appropriate interest rate and the calculation of interest may need to be resolved.

3. Is there opportunity to rule under these circumstances that the secured aspect of this claim is being dealt with outside of the plan, that payments are being made on account of the claim, that the claim of the debtor has been assigned to the law firm, and that if and when the house is sold, the lien (in the appropriate amount) would be satisfied?

I particularly need to revisit the issue of whether it was appropriate for me to rule that the debtor would retain personal liability on this entire debt. I am scheduling the matter for final hearing on **Tuesday, May 15, 2012 at**

**2:00 p.m.** Further submissions on the matter are welcome.

By way of suggestion, if there is an opportunity for the parties to resolve these matters amicably, they should consider short term and long term resolutions. Short term, an arrangement might involve a continuation of monthly payments from James. Long term, a resolution may involve the fixing of an adjusted amount to be received by the law firm from the proceeds of the sale of the home. These are suggestions only, and meant only to facilitate discussions between the parties.

Enclosed is a copy of the transcript of proceedings on October 3, 2011.

Very truly yours,

JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT

Enclosure
JHW:tob

```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF NEW JERSEY


IN RE:                         )     Bankruptcy No. 11-20515-JHW
                               )
                               )     Chapter 13
  DEBORAH A. CARDENAS          )
                               )
                               )
             Debtor,           )
                               )
-----------------------------
BORGER, JONES, MATEZ &         )
KEELEY-CAIN,                   )     Adversary No.: 11-2012-JHW
                               )
             Plaintiff,        )
                               )
     v.                        )
                               )
DEBORAH A. CARDENAS,           )     Camden, NJ
                               )     October 3, 2011
             Defendant.        )     10:36 a.m.

                       TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE JUDITH H. WIZMUR
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:              STEVEN N. TAIEB, ESQUIRE
                             TAIEB LAW
                             1155 Route 73, Suite 11
                             Mt. Laurel, NJ 08054

For Plaintiff                THOMAS M. KEELEY-CAIN, ESQUIRE
Borger Jones Matez           BORGER, JONES, MATEZ & KEELEY-CAIN
& Keeley-Cain:               1415 Route 70 East, Suite 305
                             Cherry Hill, NJ

Audio Operator:              Norma Sader

Transcribed by:              DIANA DOMAN TRANSCRIBING
                             P.O. Box 129
                             Gibbsboro, New Jersey   08026-129
                             PHONE:  (856)435-7172
                             FAX:    (856) 435-7124
                             Email:  Dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
1                           I N D E X

2        Motion to Modify Claim

3        Argument By:

4           Mr. Taieb                          4, 8

5           Mr. Keeley-Cain                       6

6        THE COURT                                9
```

3

1    (Call to the Order of the Court)

2    THE COURT: Number 67, Cardenas.

3    MR. TAIEB: Good morning, Your Honor. Steven
4    Taieb --

5    THE COURT: Good morning.

6    MR. TAIEB: -- representing Deborah Cardenas.

7    MR. KEELEY-CAIN: Good morning, Your Honor. Thomas
8    M. Keeley-Cain from the law firm of Borger, Jones, Matez &
9    Keeley-Cain, on behalf of the creditor, Borger, Jones Matez &
10    Keeley-Cain.

11    THE COURT: Yes. This is a motion to modify the
12    claim. I don't recall seeing a response, a written response.
13    Did you submit one, counsel?

14    MR. KEELEY-CAIN: I did, Your Honor. It's dated
15    September 2nd.

16    THE COURT: I must have missed it. I'm sorry about
17    that.

18    MR. KEELEY-CAIN: It's actually -- I think this is my
19    copy in the file, but --

20    THE COURT: Well if it's there, we'll have it. And I
21    just missed it. Mr. Taieb, why don't you start us off?

22    MR. TAIEB: Your Honor, may it please the Court, Mr.
23    Keeley-Cain was a divorce lawyer for my client, and he obtained
24    a judgment in the divorce.

25    There was a lot of stuff in the divorce case.

                            Taieb - Argument                          4

1   Naturally, I wasn't involved in that. He's alleging a $50,000

2   secured claim. My client's not opposing that. But it's really

3   against her ex-husband. And the ex-husband advised me, not in

4   writing, that he was making arrangements.

5           But even if he is not paying Mr. Keeley-Cain, I think

6   then there would be a basis for him to vacate the stay to go

7   after the ex-husband outside of the Bankruptcy Court looking at

8   this.

9           To be honest, Your Honor, if this $50,000 claim

10  against the ex-husband is a proof of claim it makes the plan

11  totally non-feasible. And I just feel that it's a harsh

12  penalty for my client to have to deal with a $50,000 claim

13  against her ex-husband.

14          THE COURT: Let me sort this out. And I'll hear from

15  you in a moment, Mr. Keeley-Cain. The -- the representation

16  was on behalf of your client, correct?

17          MR. TAIEB: I think that's what Mr. Keeley-Cain

18  represented.

19          THE COURT: And the husband was charged with payment.

20  That didn't remove your client's obligation to pay as well, did

21  it.

22          MR. KEELEY-CAIN: Correct, Your Honor.

23          THE COURT: The house -- what happened to the house?

24          MR. TAIEB: It's still jointly owned.

25          THE COURT: And who's living in it?

Keeley-Cain - Argument                                                      5

1    MR. TAIEB:  The debtor.

2    THE COURT:  The debtor?

3    MR. TAIEB:  Yes.  Ms. Cardenas.

4    THE COURT:  So she's -- and she's planning to stay in
5    the house?

6    MR. TAIEB:  She's trying to.  We modified the plan to
7    do an arrearage --

8    THE COURT:  On the first mortgage?

9    MR. TAIEB:  I think on the second, she's current on
10   the first one.

11   THE COURT:  Okay.  And this is a third secured claim,
12   behind the first two?

13   MR. TAIEB:  Evidently, this is Mr. Keeley-Cain's --
14   he alleges he has a secured interest -- judgment against the
15   ex-husband.

16   THE COURT:  It's a judgment.

17   MR. TAIEB:  That's my understanding, Your Honor.

18   THE COURT:  And is it a judge -- it's a judgment
19   against the ex-husband, or against both of them?

20   MR. KEELEY-CAIN:  Your Honor, if I may, there are two
21   parts to our claim.  First of all, there was an order -- there
22   was a judgment entered against Mr. Cardenas.  The firm -- I
23   didn't personally, but the firm represented Ms. Cardenas.

24   There was a judgment entered against Mr. Cardenas,
25   and recorded, and has a judgment number.  There was also then

Keeley-Cain - Argument                                              6

1    subsequently litigation up and back twice to the Appellate
2    Division, as a result of which there was yet another order of
3    the divorce court requiring Mr. Cardenas to pay in full all of
4    our fees.
5          The final judgment of divorce required the parties to
6    sell, and depending on who sold to buy the other out, that has
7    not occurred.  In the meantime, it's my understanding that Ms.
8    Cardenas is not receiving her full alimony, because Mr.
9    Cardenas has elected to pay the two mortgages rather than pay
10   alimony.
11         There's nothing in writing with regard to that.  The
12   -- and so the -- in that situation, what we've done is, we've
13   filed an adversary proceeding, which is, I think Ms. Cardenas
14   filed a pro se answer.  Mr. Taieb did not file that on her
15   behalf.
16         Mr. Cardenas has not responded.
17         THE COURT:  What is the thrust of the adversary
18   proceeding?
19         MR. KEELEY-CAIN:  Well the thrust of the adversary
20   proceeding is that we obtained judgments in favor of Ms.
21   Cardenas, against Mr. Cardenas for the attorney's fees, and
22   she's refused to assign them to us, cooperate with us, let us
23   pursue collection of those claims against Mr. Cardenas.
24         In fact, she neglected to list them as assets in her
25   petition, even after the filing of the adversary proceeding.

Case 11-02102-JHW    Doc 23    Filed 04/24/12    Entered 04/25/12 10:56:16    Desc Main
Document      Page 14 of 19

1  So certainly -- and we included Mr. Cardenas in the adversary
2  proceeding, because the former marital home was tenants by the
3  entireties, then as a result of the divorce filing it becomes
4  tenants in common, but they still both retain interests in it,
5  and so --
6        THE COURT:  Is there any equity in the home, to your
7  knowledge?
8        MR. KEELEY-CAIN:  Well, Your Honor, I asked, and Mr.
9  Taieb produced for me two appraisals from -- this is Ms.
10 Cardenas' second filing.  From her first filing, there were two
11 appraisals a week apart, with a disparity in value of about 50
12 or $60,000.
13       My understanding is that the current two mortgages,
14 which I believe are current, but if not, only a little bit,
15 only total about 45 or $50,000 in the upper limit.  The value
16 of the property is at least, on the low appraisal is 110.  On
17 the high appraisal, I think it's up at 160.
18       It wasn't my file for the divorce proceeding, but my
19 understanding is that there are in fact three buildable lots
20 associated with this, what they call the former marital home.
21 So there appears to be sufficient equity in that -- in those
22 properties.  So --
23       THE COURT:  So the basis for this modification is
24 that it's not her obligation, but it's his?
25       MR. TAIEB:  That would be correct, Your Honor.  And

Taieb - Argument                                                                8

1  also she represented to me that according -- she's in the
2  hospital, that's why she's not here today.  That he was
3  supposed to be making payments to Mr. Keeley-Cain, and I have
4  no knowledge of that and he's been making some payments.
5         But my response would be that, if Mr. Cardenas isn't
6  paying that then Mr. Keeley-Cain should have relief in stay.
7         THE COURT:  Well do you have no -- you have no
8  objection, or she doesn't to the firm being able to pursue Mr.
9  Cardenas otherwise?
10        MR. TAIEB:  I mean, no, I'm not representing him,
11 Your Honor.  So all I know --
12        THE COURT:  But as far as she's concerned, I mean,
13 that's part of the relief sought in the adversary proceeding.
14        MR. TAIEB:  I mean, there's a lot of stuff going on
15 with this --
16        THE COURT:  In other words, you're seeking a
17 declaration that this claim, while it can remain, if I
18 understand you correctly, as a lien on the home --
19        MR. TAIEB:  Well Ms. Balboa shouldn't have to pay
20 this claim.
21        THE COURT:  That's what you're asking for.
22        MR. TAIEB:  That's what I'm saying, because --
23        THE COURT:  And it seems as if there may be
24 acquiescence to that scheme, if there is opportunity to pursue
25 Mr. Cardenas.  As a resolution, does that work?

The Court 9

1     MR. TAIEB: I don't see any other way, Your Honor,
2 because the bottom line is, if this 50,000 secured claim, with
3 Ms. Balboa being required to pay it, it makes it totally
4 non-feasible.
5     THE COURT: That's not what's being asked for. So
6 let me propose that an order be entered that would retain the
7 lien without modification, that would allow the firm to pursue
8 -- that would assign the judgment, presumably, to the firm to
9 collect.
10     And that would propose that any payment to the firm
11 -- now this is the catch. What happens to the claim as to Ms.
12 Cardenas, if she successfully completes her Chapter 13? It
13 remains as a lien, does it remain as a personal liability?
14     MR. KEELEY-CAIN: Well it's -- I agree that's the
15 catch. I'm -- I'm not sure, because there certainly is equity
16 in excess of the secured judgments -- the secured first
17 mortgage, second mortgage, and in fact, even the judgment.
18     So there should be, in some sense, some obligation to
19 -- from Ms. Cardenas to contribute something towards the
20 attorney's fees that resulted in that situation. It's --
21     THE COURT: But you're agreeing not to require any
22 payment during the plan? It would remain as an obligation, a
23 personal obligation and a secured obligation, but there would
24 be no requirement to pay.
25     And of course, if you're successful in collecting

The Court 10

1 against mister, then that would resolve things for her.
2 MR. KEELEY-CAIN: Any payment on that is credit
3 against the amount, correct, Your Honor.
4 THE COURT: That's what the order should provide.
5 Please exchange forms of order, and --
6 MR. TAIEB: Now so retain the --
7 THE COURT: The personal liability remains with no
8 payment necessary under the plan. The secured -- the lien
9 remains intact. The judgment against Mr. --
10 MR. KEELEY-CAIN: Cardenas.
11 THE COURT: -- Cardenas is assigned to the law firm
12 to collect.
13 MR. TAIEB: I'll prepare a proposed form of order.
14 THE COURT: All right.
15 MR. KEELEY-CAIN: The only difficulty, of course, is
16 that Mr. Cardenas is a title record owner. I don't believe he
17 was even listed as a --
18 THE COURT: His rights are not -- in other words, the
19 only --
20 MR. KEELEY-CAIN: And we're doing this without his
21 consent to whether he agrees or doesn't.
22 THE COURT: But there's no consent needed --
23 MR. KEELEY-CAIN: Right.
24 THE COURT: -- because she's able to assign the
25 judgment

                                    The Court                           11

1        MR. KEELEY-CAIN:  Right.

2        THE COURT:  -- that she owns against him --

3        MR. KEELEY-CAIN:  To us.

4        THE COURT:  -- without his consent.

5        MR. KEELEY-CAIN:  Right.

6        THE COURT:  The lien against the property is not

7   being disturbed.  So what else do we need his consent for?

8        MR. KEELEY-CAIN:  Right.  Okay.  And then I believe

9   that should resolve the adversary proceeding as well.  So

10  I'll --

11       THE COURT:  It sounds like it does.  You'll take a look

12  and reflect it appropriately.

13       MR. KEELEY-CAIN:  Right.  Right.  Very good.

14       THE COURT:  Thank you.

15       MR. KEELEY-CAIN:  Thank you, Judge.

16       MR. TAIEB:  Thank you, Your Honor.

17       (Proceedings concluded at 10:47 a.m.)

18

19

20

21

22

23

24

25

```
                                                                    12
1                      C E R T I F I C A T I O N
2
3
4     I, Josette Jones, court approved transcriber, certify that the
5     foregoing is a correct transcript from the official digital
6     audio recording of the proceedings in the above-entitled
7     matter.
8
9        /s/Josette Jones                              04/19/12
10    JOSETTE JONES                                    DATE
11    DIANA DOMAN TRANSCRIBING
```